IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 1:17-CR-153 |
| v. | § | |
| | § | |
| ALVARO ROMERO (1) | § | |
| SIDNEY WORRELL (10) | § | |

**GOVERNMENT'S RESPONSE TO DEFENDANTS'
MOTION TO SUPPRESS WIRETAP EVIDENCE**

This Court should deny the defendants' motion to suppress all intercepted communications and evidence derived therefrom because: (1) Defendant Worrell lacks standing to challenge the admission of any Title III evidence, and Defendant Romero only has standing to challenge interceptions under certain orders; (2) the Title III Orders are facially sufficient when viewed with the accompanying Applications; (3) any defect is technical and does not warrant suppression; (4) Title III does not allow statutory suppression of intercepted electronic communications such as text messages; and (5) agents relied on the Orders in good faith and therefore Title III's exclusionary rule does not apply.

I.   **FACTS**

In 2013 and 2014, DEA Galveston investigated the Alvaro Romero Drug Trafficking Organization.  During the investigation, agents obtained the following eight Title III wiretap Orders:

| Order Date | Phone number(s) | User | Authorizing Judge | Authorizing DAAG | Exhibit[1] |
|---|---|---|---|---|---|
| February 14, 2014 | (281) 889-4897 | Alvaro Romero | Hon. Gregg Costa, SDTX | Paul O'Brien | A |
| March 21, 2014 | (281) 889-4897 (409) 273-0566 | Alvaro Romero Arturo Elizondo | Hon. Gregg Costa, SDTX | Kenneth A. Blanco | B |
| April 23, 2014 | (409) 273-0566 (409) 273-1101 | Arturo Elizondo Alvaro Romero | Hon. Gregg Costa, SDTX | Paul O'Brien | C |
| May 5, 2014 | (832) 987-6066 (832) 563-9904 (956) 638-8209 | Miguel Rodriguez Alexander Alonso Valerio Celedon | Hon. Gregg Costa, SDTX | Paul O'Brien | D |
| May 14, 2014 | (832) 727-2669 | Jose Rubio | Hon. Gregg Costa, SDTX | David Bitkower | E |
| July 2, 2014 | (832) 277-7590 | Ricardo Aviles | Hon. Vanessa Gilmore, SDTX | Paul O'Brien | F |
| July 16, 2014 | (832) 594-5397 | Lauro Ali Peña | Hon. Vanessa Gilmore, SDTX | Kenneth A. Blanco | G |
| August 8, 2014 | (832) 277-7590 | Ricardo Aviles | Hon. Kenneth Hoyt, SDTX | Paul O'Brien | H |

Defendant Worrell himself was never intercepted over any of the phones tapped under the above Orders.  A female associate of Worrell's was intercepted over the wiretap pursuant to the May 14, 2014 Order.  The intercepted phone was subscribed to Worrell's female associate, but the subscriber information listed an email address that agents believe is Worrell's email.  Worrell and his female associate were not intercepted over any other phones or under any other Title III Order.

The February 21, 2014, March 21, 2014, and April 23, 2014 Orders authorized interceptions over phones used by Defendant Romero.  He was intercepted pursuant to

---

[1] Each exhibit includes the Order and the Application with the Deputy Assistant Attorney General (DAAG) authorization letter as an attachment.

those Orders, as well as the May 5, 2014 Order.  Although Defendant Romero was named

as a target subject in the other four Orders, he was not intercepted under any of them.

Each application was approved by a Deputy Assistant Attorney General (DAAG)

in the Department of Justice's Criminal Division authorized to provide that approval.

Each Order stated the following in its first sentence:  "Application under oath having

been made to me . . . and full consideration having been given to the matter set forth

therein . . . ."  Each Application had the following language:

> Attached to this application (as Exhibit A) and incorporated by
> reference herein, are copies of the Attorney General's order of
> special designation and the Memorandum of Authorization
> approving this application.

Attached to each Application was an authorization letter signed by a specific DAAG, as

well as the Attorney General's Order designating any DAAG in the Criminal Division is

authorize Title III applications.  *See generally* 18 U.S.C. § 2516(1).

Later in each Order, after the sentence incorporating the Application, each Order

stated in part:

> . . . acting under authorized supervision pursuant to 18 U.S.C.
> § 2518(5) are authorized pursuant to application authorized by a
> duly designated official of the Criminal Division, United States
> Department of Justice pursuant to the power delegated to that
> official by special designation of the Attorney General of the United
> States under authority vested in him by 18 U.S.C. § 2516 to
> intercept: (1) wire and electronic communications of  . . . .

An Eastern District of Texas Grand Jury indicted Defendant Worrell on December 6,

2017.  After arrest, he made his initial appearance on February 21, 2018, and was

arraigned on February 26, 2018.  He filed a motion to suppress wiretap evidence on

August 10, 2018.  Defendant Romero adopted Worrell's motion on August 20, 2014, and this response follows.

## II.     LAW AND ARGUMENT

Title III provides for the manner and method in which all applications for the interception of wire, oral, or electronic communications must be made.  *See* 18 U.S.C. §§ 2510-18.  In particular, Section 2518(1) sets forth the requirements for an application for an order of interception, while Section 2518(4) provides that "[e]ach order authorizing or approving the interception of any wire, oral, or electronic communications … shall specify" among other things "the identity of the agency authorized to intercept the communications, and the person authorizing the application." *Id.* § 2518(4)(d).  Title III also includes its own suppression remedy, providing that an "aggrieved person . . . may move to suppress" intercepted communications on three grounds:

i.    the communication was unlawfully intercepted;

ii.   the order of authorization or approval under which it was intercepted is insufficient on its face; or

iii.  the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a)(i-iii).

The Supreme Court has repeatedly made clear that "'(not) every failure to comply fully with any requirement provided in Title III'" warrants suppression.  *United States v. Donovan*, 429 U.S. 413, 433 (1977) (*quoting United States v. Chavez*, 416 U.S. 562, 574-75 (1974)) (alteration in original).  The statute does not further define the term

4

"insufficient on its face" for purposes of § 2518(10)(a)(ii) ("subparagraph (ii)").

Recently in *Dahda v. United States*, the Supreme Court held that a Title III order is

"insufficient on its face" when it is "deficient" or "lacking what is necessary or

requisite."  138 S.Ct. 1491, 1498-99 (2018) (citing dictionaries).  The Court found that an

overbroad provision in a Title III order that otherwise contained all the statutory

requirements did not render the order facially insufficient.  *Id.* at 1499-1500.  Courts have

generally applied a "core concerns" test for determining whether suppression is

warranted under § 2518(10)(a)(i) for an "unlawfully intercepted" communication,

considering whether the violation implicated one of the "core concerns" Congress

expressed in enacting Title III.  *See United States v. Giordano*, 416 U.S. 505, 527 (1977).

However, in *Dahda* the Supreme Court rejected this "core concerns" approach for

analyzing suppression under subparagraph (ii), finding "no good reason for applying

*Giordano*'s test" to subparagraph (ii) and concluding, "The statute means what it says."

138 S.Ct. at 1498.

The Supreme Court rejected the claim that "any defect that may appear on an

order's face would render it insufficient," and held that "subparagraph (ii) does not

cover each and every error that appears in an otherwise sufficient order."  *Id.*  Rather, the

Court concluded that "subparagraph (ii) covers at least an order's failure to include

information that § 2518(4) specifically requires the order to contain."  *Id.*  Crucially, the

Court declined to decide whether other types of technical "defects," which lower courts

had held do not require suppression, render an order facially insufficient under

subparagraph (ii).  *Id.* (citing *United States v. Moore*, 41 F.3d 370, 375-76 (8th Cir. 1994

(order missing judge's signature); *United States v. Joseph*, 519 F.2d 1068, 1070 (5th Cir. 1975) (order identifying the wrong Government official as authorizing the application); *United States v. Vigi*, 515 F.2d 290, 293 (6th Cir. 1975) (same)).  However, the Supreme Court has specifically rejected a challenge under subparagraph (ii) to the facial sufficiency of a Title III order where the Government obtained approval from an appropriate official at the Justice Department but failed to identify correctly that official in the order of interception.  *Chavez*, 416 U.S. at 574-75.

Moreover, even if one of the statutory bases for suppression might be met, a district court in this Circuit has recognized that the "good faith" exception to the exclusionary rule applies in Title III cases.  *United States v. Davis*, 2003 WL 548910, at *10 (E.D.L.A. 2003) (Vance, J.) (unpublished).  In *Davis*, the district court relied on *United States v. Leon*, 468 U.S. 897 (1984), when it held that suppression under Title III is not required if officers act on the objectively reasonable belief that their conduct does not violate the Fourth Amendment or the statute.  2003 WL 548910 at *10 (internal citations omitted).

A.    *Defendant Worrell lacks standing to challenge all the Orders.  Defendant Romero lacks standing to challenge the May 14, 2014, July 2, 2014, July 16, 2014, and August 8, 2014 Orders.*

Defendant Worrell was never intercepted and was never named as a target subject on any of the wiretaps he seeks to suppress.  In his Motion, he requests suppression of "the interception of wire communications of his phone."  *Worrell Mot.* at 1.  He does not

further develop how the phone is "his."[2]  The phone was subscribed to his female

associate, and while she was intercepted in the course of the May 14, 2014 wiretap,

Worrell never was.

Defendant Romero was intercepted in the course of the February 21, 2014, March

21, 2014, and April 23, 2014, May 5, 2014 wiretaps.  While he was not intercepted on the

remaining wiretaps, he was named as a target subject in the remaining wiretaps.

Section 2518(10)(a) of Title III states that any "aggrieved person" may move to

suppress the contents of any wire or oral communication intercepted pursuant to Title III,

or any fruits derived therefrom, on one of the specified grounds.  18 U.S.C. §

2518(10)(a)(i)-(iii).  Title III defines an "aggrieved person" as one who is either (1) a

party to any intercepted communication, or (2) a person against whom the interception

was directed – the user of the tapped phone.  *Id.* § 2510(11).  Although Title III contains

this express standing provision, courts have long recognized that Congress's intent was to

apply the existing law of Fourth Amendment standing to wiretap cases.  *United States v.*

*Scasino*, 513 F.2d 47, 50 (5th Cir. 1975) (*citing Alderman v. United States*, 394 U.S. 165

(1969).  Relying on this Congressional intent, courts continue to construe Title III

standing in accordance with standing requirements applied to suppression claims under

the Fourth Amendment.  *See*, *e.g.*, *United States v. Gallo*, 863 F.2d 185, 192 (2d Cir.

---

[2] If Worrell is claiming he owned the phone and that provides him standing, *see United States v. Ortega-Estrada*, 2008 WL 4716949 at *2-5 (N.D. Ga. 2008), he has not met his burden of production.  *See generally United States v. Poe*, 462 F.2d 195, 197 (5th Cir. 1972) (motions to suppress must set forth allegations that are sufficiently detailed, specific and non-conjectural to make plain to a court that some investigation is warranted)  In *Ortega-Estrada*, defendant filed affidavits claiming ownership of the phone.  2008 WL 4716949 at *2.  No such affidavit has been filed here.

1988) (*citing Alderman*, 394 U.S. at 175–76 & n. 9).  Accordingly, one does not become an "aggrieved person" under Title III solely by the introduction against that person of damaging evidence resulting from intercepted communications.

In *Scasino*, the defendants sought to suppress Title III recordings that were the undisputed fruits of a prior illegal wiretap.  513 F.2d 47, 49-50.  The Fifth Circuit, adopting *United States v. Gibson*, 500 F.2d 854 (4th Cir. 1974), concluded that defendants had no standing to challenge the prior wiretap in large part because they were not directly implicated by the prior wiretap.  *Scasino*, 513 F.2d at 49.  In *Gibson*, the Fourth Circuit, under factual circumstances nearly identical to those in *Scasino*, concluded that "[t]he clear implication of [Section 2518(10)(a)] is that an 'aggrieved person' should not include one who is not implicated and against whom no one has made of proffer of information derived from the defectively authorized tap."  500 F.2d at 855.

Worrell was not a party to any of the intercepted communications.  Only his female associate was intercepted.  Accordingly, he lacks standing to challenge any of the wiretaps pursuant to Section 2518(10)(a).

As for Romero, the Government does not dispute his standing to challenge the February 21, 2014, March 21, 2014, and April 23, 2014, May 5, 2014 wiretaps.  For the remaining wiretaps, he was named as a target subject but never intercepted.  Based on *Scasino,* Romero lacks standing to challenge any evidence from the remaining wiretaps. Like in *Scasino*, Romero was not implicated in the remaining wiretaps, and no one provided information against him from those wiretaps.  *See Gibson*, 500 F.2d at 855.

In *United States v. Martin*, 169 F.Supp.2d 558, 564-65 (E.D. La. 2010), a district court in this Circuit found that a defendant lacked standing even when that defendant was intercepted.  In *Martin*, the court rejected a claim that a single "serendipitous phone call" would give a defendant standing to challenge the fruits of hundreds of hours of interceptions in which he had no privacy interest.  *Id.* at 565.  "This broad interpretation is contrary to Fourth Amendment standing law which has been held to govern motions to suppress under Title III.  Standing under the Fourth Amendment is narrowly construed to include only those whose privacy rights are actually violated."  *Id.* (*citing Alderman*, 394 U.S. at 171–72); *see also United States v. King*, 478 F.2d 494, 506 (9th Cir. 1973); *United States v. Azano Matsura*, 129 F.Supp.3d 975, 978–82, (S.D. Cal. 2015); *United States v. Salemme*, 91 F.Supp.2d 141, 381–84 (D. Mass. 1999); *but see United States v. Oliva*, 705 F.3d 390, 395 (9th Cir. 2012); *United States v. Cooper*, 2014 WL 3784344, at *10–11 (N.D. Cal. 2014).

Under *Martin*'s reasoning and logic, Romero being named as a target subject, in and of itself, should not confer standing to challenge Orders under which he was not intercepted.  He had no privacy interest in the conversations over those wiretaps, and, therefore, should not have standing to challenge evidence from the May 14, 2014, July 2, 2014, July 16, 2014, and August 8, 2014 Orders.

*B.*     *The Orders incorporated and expressly referenced the Applications, to which the relevant authorization memorandum with the authorizing official's name was attached.  Thus, the orders are not facially insufficient.*

Each Order stated the following in its first sentence:  "Application under oath having been made to me . . . and full consideration having been given to the matter set

9

forth therein . . . ."  As such, the Orders incorporated the Applications and expressly referred the reviewing judge to those Applications.  By signing the Orders, as every reviewing judge did in this case, the judges committed to having given full consideration the matter set forth "therein," referring to the Applications and its attachments.

Attached to each Application was an authorization letter signed by a specific DAAG within the Criminal Division of the Department of Justice, who was specially designated by the Attorney General to authorize Title III applications.  *See generally* 18 U.S.C. § 2516(1).  The Orders incorporated the Applications, all of which had the specific name of the authorizing official in them as part of an attachment.  As such, the authorizing official was identified by reference in the Orders.  Thus, the Orders were not facially insufficient, because they included the information required by § 2518(4)(d).

Without question, the reviewing judges had the identity of the authorizing official before them when they signed the Orders.  *See United States v. Callum*, 410 F.3d 571, 576 (9th Cir. 2005) (rejecting a claim that an order was facially insufficient when the specific identity of the authorizing official was not listed in the order, and observing that "the issuing judge had been presented with written DOJ authorization for the wiretap before he signed the order"); *United States v. Radcliff*, *331* F.3d 1153, 1161 (10th Cir. 2003) (authorizing officials identified in applications, not in orders, but "Defendant knew from the time he learned of his indictment" the identity of the authorizing officials "because he was provided at that time with copies of both the wiretap applications and the wiretap orders").

10

The Supreme Court's decisions regarding identification of the authorizing official in a Title III order are instructive.  In *Chavez*, as here, the Government obtained the required approval from an appropriate official before submitting its application to the reviewing judge.  However, in both its application and order, the Government failed to identify correctly the authorizing official, stating instead that an Assistant Attorney General had authorized the application.  On those facts, the Court concluded that the error did not warrant suppression under subparagraph (ii) because the order identified an official, and that the identity was incorrect did not detract from the facial sufficiency of the order.  416 U.S. at 573.  The Court further noted that even if it were to look "behind the order despite the clear 'on its face' language of the statute," it was clear that an appropriate official had, in fact, authorized the application.  *Id.* at 574-75.  The Court concluded, "[i]n no realistic sense, therefore, can it be said that the order failed to identify an authorizing official who possessed statutory power to approve the making of the application." *Id.* at 574.

By contrast, in *Giordano*, the Court concluded suppression was appropriate for unlawful interception under subparagraph (i) where the Government had not obtained the approval of an authorized official.  Instead, the Attorney General's executive assistant had "authorized" the application.  On those facts, the Court found suppression appropriate under subparagraph (i) because the application failed to satisfy a "core concern" of Congress in enacting Title III, namely that an appropriate senior official at the Justice Department approve the application.  *Giordano*, 416 U.S. at 527.

While *Dahda* rejected *Giordano*'s "core concerns" analysis for subparagraph (ii), it did not adopt a mechanical test or confine reviewing courts to the four corners of the order in determining facial insufficiency *Dahda* only held that — (1) facial insufficiency is based on what is required to be in an order; (2) "core concerns" analysis does not apply to subparagraph (ii); and (3) overbroad orders by definition are not facially insufficient.

The D.C. Circuit's opinion in *United States v. Scurry*, 821 F.3d 1 (D.C. Cir. 2016), is not binding on this Court, and, more importantly, its reasoning does not withstand scrutiny, particularly in light of the cases described above.  In *United States v. Glover*, upon which *Scurry* relied, the D.C. Circuit considered a Title III order signed by a judge in the District of Columbia but that purported to authorize installation of a bug in a vehicle in the District of Maryland.  736 F.3d 509 (D.C. Cir. 2013).  In evaluating whether the order was "insufficient on its face" for purposes of subparagraph(ii), that court announced, based upon scant authority, that it would employ a "mechanical test; either the warrant is facially sufficient or it is not."  *Id.* at 513.  It further concluded, citing no authority at all, that if an order was deemed facially insufficient, "suppression is the mandatory remedy.  There is no room for judicial discretion."  *Id.* at 513.  Ultimately, the Court found the order to be overbroad and deemed that made the order facially insufficient.  *Id.* at 514-16.  *Dahda* abrogated *Glover* insofar as *Glover* held that an order can be facially insufficient based on overbreadth.  *Dahda* specifically held that an overbroad order does not render it facially insufficient. 138 S.Ct. at 1499-1500.  Thus, the foundation for *Glover*'s reasoning has been undermined.

12

A year later, in *Scurry*, the D.C. Circuit considered the facts similar to those present here: a Title III application that referenced the full name and title of the authorizing official, but an order that stated that the application had been authorized by "******, Deputy Assistant Attorney General of the Criminal Division . . .  pursuant to the power delegated to that official by . . . the Attorney General." *Scurry*, 821 F.3d at 8. The *Scurry* court, noting that it was bound by *Glover* to apply a "mechanical test" in evaluating the sufficiency of the order, declined to consider the fact that the application and accompanying materials properly identified the authorizing official, concluding that its inquiry "is limited to the four corners of the wiretap order." *Id.* at 9. The *Scurry* court further rejected the district court's finding that the error was a "technical defect that did not undermine the purposes" of Title III, noting that Congress had specifically mandated inclusion of the missing information in the order to further the Congressional interest in, among other things, promoting accountability on the part of the approving officials. *Id.* at 10. Finally, because the *Glover* court had further held that "suppression is the mandatory remedy" and "[t]here is no room for judicial discretion," the court suppressed the evidence. *Id.* at 13, 18.

Each component of the *Scurry* ruling is in considerable tension with, if not directly contrary to, controlling authority, and no court before or after *Dahda* has adopted its reasoning. *Scurry* cites *Chavez* and *Giordano* for the proposition that reviewing courts are bound by the four corners of the order. *Scurry*, 821 F.3d at 9 (*citing Chavez*, 416 U.S. at 573-74 and *Giordano*, 416 U.S. at 525 n.14). But *Scurry* reads too much into those cases. *Chavez* did not hold that a reviewing court cannot look beyond the four corners of

13

the order to determine the order's facial insufficiency.  Indeed, the Court observed that whether you looked within the four corners of the document or looked "behind the order," suppression was not warranted.  416 U.S. at 574.  Moreover, *Chavez* said nothing about whether a reviewing court can look to those documents incorporated by reference into a Title III order, such as the Applications and their attachments were here.

The *Giordano* footnote citation is equally misplaced.  In footnote 14 in *Giordano*, the Court stated the Fourth Circuit erred when it found that a failure to identify the correct authorizing official in the application rendered the order insufficient in its face. *Giordano*, 416 U.S. at 525 n.14.  The footnote says nothing about confining the inquiry to the four corners of the order.  In fact, the Fourth Circuit looked at the application to determine that an error in it made the order facially insufficient.  *Id.*

No other court has concluded that it cannot look beyond the order to an application incorporated by reference to determine whether the Government had, in fact, obtained the necessary approval and identified the official in the pleadings before the court.  No other court has suggested that, where the reviewing judge is provided with the identity the approving official in other components of the application, that a failure to identify the specific name of the authorizing official in an order of interception incorporating that application makes the order facially insufficient.  And no other court has concluded that suppression is warranted on these facts.  Indeed, no other Circuit has followed *Scurry*, and the only courts to face a motion based on similar facts since *Scurry* have ruled the other way.  *See United States v. Friend*, 2017 WL 6947861 at *3 (W.D. Mo. Dec. 8, 2017) (rejecting *Scurry* as "not persuasive" and noting that "*Scurry* is an outlier among

14

the circuits, all of which have followed the approach outlined in *Chavez* in finding that similar facts do not warrant suppression because the violation is nothing more than a technical defect"); *United States v. Gatto*, 2018 WL 1801313 at *3 (considering *Scurry* to be "decided wrongly" and noting that other circuits facing wiretap orders with similar infirmities uniformly concluded that the technical defect in the orders did not warrant suppression.)

C.      *Any errors in the Orders are technical defects and do not require suppression.*

*Dahda* specifically deferred deciding whether technical defects in an order mandate suppression.  *Id.* at 1498.  As such, the binding authority from the Fifth Circuit and voluminous authority from other circuits that rely on *Chavez* all remain good law.

The Applications and accompanying materials — materials the Orders expressly referred to as a basis for its findings and thereby incorporated — included the identity of the "person authorizing the application."  18 U.S.C. § 2518(4)(d).  Moreover, the Order included the fact that the necessary approval had been obtained, as well as the title of the person approving the order, i.e. "a duly designated official of the Criminal Division, United States Department of Justice pursuant to the power delegated to that official by . . . the Attorney General of the United States under authority vested in him by 18 U.S.C. § 2516 . . . ."  On these facts, the Orders at most, contained a technical defect in *how* the order identified the authorizing official, rather than *whether* the order identified the official.  Consistent with Fifth Circuit authority, suppression is not warranted.

In *United States v. Joseph*, the Fifth Circuit rejected a facial insufficiency challenge where the order referred to the wrong authorizing official.  519 F.2d 1068, 1070-71 (5th Cir. 1975).  The Court held that "[T]his particular defect did not make an order facially insufficient."  *Id.* at 1071.  *Joseph* relied on *United States v. Robertson*, where the Fifth Circuit faced a similar issue with a wrongly named approving official in an application.  504 F.2d 289, 291-92 (5th Cir. 1974).  The Fifth Circuit decided *Robertson* on subparagraph (i) grounds, *Id.*, while *Joseph* only used the term "facially insufficient."  519 F.2d at 1070-71.  Thus, *Joseph* is a subparagraph (ii) ruling.  As such, a technical defect in the order does not render it facially insufficient in the Fifth Circuit. No binding authority in the Fifth Circuit stands for that proposition.

In fact, every court but the D.C. Circuit has concluded that where, as here, an appropriate official did, in fact, authorize the application, a failure to specifically identify that official in the order does not warrant suppression.  *See, e.g.*, *United States v. Gray*, 521 F.3d 514 (6th Cir. 2008) (suppression not warranted when order identifies no authorizing official at all, so long as the record shows that a statutorily designated official actually granted authorization); *United States v. Callum*, 410 F.3d 571, 576 (9th Cir. 2005) (rejecting a claim of facial insufficiency when no authorizing official was listed in the order, but observing that "the issuing judge had been presented with written DOJ authorization for the wiretap before he signed the order"); *United States v. Fudge*, 325 F.3d 910 (7th Cir. 2003) (citing *Chavez* and finding no suppression when order identified authorizing official by title and authorization was attached to the application); *United States v. Traitz*, 871 F.2d 368 (3d Cir. 1989) (holding order identifying authorizing

16

official by title adequately identified the official and if it was insufficient, such an error was a technical defect that did not require suppression).

More generally, every other court confronted with "technical deficiencies" of a similar sort in an order of interception has concluded that such errors do not warrant suppression. *See, e.g.*, *United States v. Moore*, 41 F.3d 370, 374 (8th Cir. 1994) (judge's failure to sign the order does not warrant suppression where it is clear judge reviewed and approved the application and order); *see also id.* at 374-75 ("[E]very circuit to consider the question has held that 2518(10)(a)(ii) does not require suppression if the [error in] the wiretap order is no more than a technical defect.") (collecting cases); *United States v. Foy*, 641 F.3d 455, 463 (10th Cir. 2011) (reference in wiretap application to the incorrect source of authority for the Attorney General's delegation to the authorizing official immaterial because the official did have the requisite delegated authority and "[n]ot all deficiencies in wiretap applications . . . warrant suppression").

The Seventh Circuit's opinion in *Fudge* is instructive. There, the court considered a motion to suppress because the order of interception, as here, stated only that the application has been authorized "by a duly designated official of the Criminal Division." *Id.* at 918. *Citing Chavez*, the Court noted although the order only named the title of the authorizing official, the Government had obtained the requisite approval and concluded that the technical failure to provide the name of the approving official "does not warrant suppression." *Id.*

The Third Circuit's opinion in *United States v. Acon*, 513 F.2d 513 (3d Cir. 1975), similarly counsels against suppression. There, the Court found suppression unnecessary

17

when the Department of Justice official who signed the authorization was different from the person who actually made the authorization.  *Id.* at 518.  Noting that "suppression is not required for every *minor insufficiency*," the Court held suppression was not required even when an order is facially insufficient as long as the facial insufficiency was "technical."  *Id.* at 518-19 (*citing United States v. Cirillo*, 499 F.2d 872, 880 (2d Cir. 1974)) (emphasis added).  Thus, even if this Court determines that the Orders contained a technical defect, it remains on firm ground in denying the motion to suppress.

Further, in *Gray*, the Sixth Circuit found that where the order omitted any reference at all to the name of the approving official or his title but the record showed that an appropriate official approved the application, suppression was unnecessary. Noting that, as of that date, "every circuit to consider the question has held that § 2518(a)(ii) does not require suppression if" the error in the order "is no more than a technical defect," the Court concluded that the technical defect in that case did not warrant suppression.  "Under these circumstances, the underlying purpose of § 2516(1)" — ensuring than an appropriate official approved the application — "was served."  *Id.* at 527.

Here, the same is true.  While the Orders themselves did not contain the name of the approving official, they did accurately reflect that the requisite approval had been obtained, they identified the approving official by title, and they incorporated and referenced the Applications, which identified the specific authorizing official in the attached memoranda.  As was true in *Chavez*, the error here "did not affect the fulfillment of any of the reviewing or approval functions required by Congress and is not within the

18

reach of [sub]paragraph (ii)." *Id.* at 575.  Indeed, any technical defect there did not

warrant suppression. *Id.* at 578.

Our situation is far from the one in *United States v. Lomeli*, 676 F.3d 734, 741-42

(8th Cir. 2012).  There, both the application and order completely failed to identify the

authorizing official, and the approval memorandum was not attached to either document.

*Id.*  The Court suppressed and found that the agents could not have relied on the

documents in good faith because the authorizing official's name was never presented to

the district judge. *Id.* at 742.  Here, by contrast, the official's name was attached to the

Applications, and the Orders explicitly referenced the Applications and stated that they

were fully considered.

Because any error here is a "technical defect" in how the authorizing official was

identified, and did not result in the Orders omitting any information required by Title III,

and consistent with *Chavez* and the holdings of every other Circuit to address the issue,

suppression is not warranted.  This Court should reject the defendants' invitation to

follow *Scurry* in the face of overwhelming contrary authority, including in the Fifth

Circuit, and deny the motion to suppress.

**D.**     *Electronic communications (text messages) are not subject to suppression under section 2518(10)(a).*

The defendants' motion is at best unclear whether it seeks suppression of all

communications intercepted under the Orders (Mot. at 10), or just suppression of "wire"

communications (Mot. at 1), namely phone calls.  To the extent the defendants seek

suppression of electronic communications and evidence derived therefrom, statutory

suppression for an order deemed facially insufficient is not available for intercepted electronic communications such as text messages.

18 U.S.C. § 2516(3) provides that:

> *Any attorney for the Government* (as such term is defined for the purposes of the Federal Rules of Criminal Procedure) *may authorize* an application to a Federal judge of competent jurisdiction for, and such judge may grant, in conformity with section 2518 of this title, an order authorizing or approving the interception of *electronic communications* . . . .

(emphasis added).

Each Order references that the Application was made by a Special Assistant United States Attorney, who is an "attorney for the Government." *Id.*  Therefore, omitting the identity of the authorizing DOJ official from an order as it applies to the interception of *electronic* communications cannot lead to suppression of electronic communications under subparagraph (ii).[3]  *See United States v. Apodaca*, 287 F. Supp. 2d 21, 32-33 (D.D.C. 2017).  Moreover, the statutory suppression provision itself only allows suppression of "wire or oral communications."  18 U.S.C. § 2518(10)(a).  The statute does not allow for statutory suppression of electronic communications, and therefore a defendant may only seek Constitution-based suppression of such communications. Defendants have not raised any Fourth Amendment-based objection to the asserted facial insufficiency, and any such claim would lack all merit.

---

[3] Authorization by a DAAG is required for applications to intercept electronic communications only by Department of Justice policy, not by statute, and therefore statutory suppression cannot result from any issues regarding such policy-based authorization.  *See* S. Rep. 99-541, at *28, 1986 U.S.C.C.A.N. 3555, 3582 ("The Department of Justice has advised the Committee on the Judiciary that for the three years which follow the date of enactment of this legislation, this authority will only be exercised pursuant to the approval of the same level of officials as those involved in the approval of applications for wire interceptions.").

E.     *The Government Was Entitled to Rely in Good Faith on the Orders*

The reviewing courts signed these Orders in January through June 2014, well before *Scurry* and *Dahda* were decided.  Even if *Dahda* may be read as somehow to undermine or question *Joseph*, *Robertson*, and the many other cases rejecting suppression for the asserted defect here, they were the authority at the time of signing.  In addition, any agents executing interceptions here could have known from the Orders and their referencing and incorporating the Applications the precise identity of the authorizing official.  As such, this Court should find that the agents acted in good faith in relying on the Orders and believing that the Orders included all the information required by Title III.  Therefore, suppression is not required.

In *Davis v. United States*, the Supreme Court held that "Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule."  564 U.S. 229, 241 (2011).  *Davis* reaffirmed the rule first established in *United States v. Leon*, 468 U.S. 897, 907-08 (1984).  There, the Court held that as long as officers relied in good faith on a warrant, suppression is not required.  "Particularly, when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system."  *Id.*  In fact, "Indiscriminate application of the exclusionary rule, therefore, may well "generat[e] disrespect for the law and administration of justice."  *Id.* at 908 (*citing Stone v. Powell*, 428 U.S. 465, 491 (1976)).  "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law."  *Leon*, 468 U.S. at 921

Here, agents had the precedent of *Chavez*, *Robertson*, and *Joseph* when the wiretap Orders were signed.  As discussed above, a technical defect in how the authorizing official was identified is at best a "minor transgression."  Suppressing for that technical defect would be an indiscriminate application of the exclusionary rule.

The Fourth, Eighth, and Eleventh Circuits all have applied the good faith exception in Title III cases.  *See Moore*, 41 F.3d at 376-77 (8th Cir. 1994); *United States v. Malekzadeh*, 855 F.2d 1492, 1497 (11th Cir. 1988); *see also United States v. Brewer*, 204 Fed. App'x 205, 208 (4th Cir. 2006) (unpublished).  Only the D.C. Circuit in *Glover*, and the Sixth Circuit have found that the good faith exception does not apply to Title III.  *See United States v. Rice*, 478 F.3d 704, 711-14 (6th Cir. 2007).  The Fifth Circuit has not specifically addressed the issue, but a district court in this circuit has held that the "good-faith exception to the exclusionary rule … applies in Title III cases."  *Davis*, 2003 WL548910 at *10.

There is no basis for concluding that the agents' reliance on the Orders was "not reasonable."  In particular, the agents were entitled to rely on the fact that a judge had reviewed the Government's Applications, which met every requirement of Title III and had included the specific identity of the authorizing DAAG in the attached authorization memoranda, and that a judge had approved the Orders based on the Applications, which were referenced by and incorporated into the Orders.  Indeed, even had agents identified any technical defect in the Orders at the time, it would not have been unreasonable for them to continue to rely upon them, given that both common sense and the overwhelming weight of authority dictated that such an error in an order of interception is "minor" or

22

"technical" and thus does not warrant suppression.  As such, even if a technical defect in the Orders could be said to render the orders "facially insufficient," this Court should nonetheless find that suppression is not warranted here because agents acted in good faith in relying on them.

## III.  CONCLUSION

Because (1) defendant Worrell lacks standing to challenge interceptions under any of the Orders and defendant Romero lacks standing to challenge interceptions under four of the eight Orders, (2) the Orders were facially sufficient, (3) any error was merely a technical defect, (4) statutory suppression does not apply to intercepted electronic communications, and (5) agents relied on the Orders in good faith, the Government asks this Court to deny the motion.

Respectfully submitted,

JOSEPH D. BROWN
UNITED STATES ATTORNEY


*/s/ Christopher T. Rapp*
CHRISTOPHER T. RAPP
Assistant U. S. Attorney
Arizona Bar No. 025704
350 Magnolia, Suite 150
Beaumont, Texas  77701
(409) 839-2538
(409) 839-2550 (fax)
christopher.t.rapp@usdoj.gov

<u>CERTIFICATE OF SERVICE/CONFERENCE</u>

I hereby certify that a copy of this motion was provided to defense counsels August 28, 2018, via electronic transmission.

*/s/ Christopher T. Rapp*
CHRISTOPHER T. RAPP
Assistant U.S. Attorney
