IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 1:17-CR-153 |
| v. | § | |
| | § | (Oral Argument Requested) |
| ALVARO ROMERO (1) | § | |
| ARTURO ELIZONDO (2) | § | |
| JOSE RUBIO-VILLEGAS (6) | § | |
| INES RUBIO-VILLEGAS (7) | § | |
| ALEXANDER ALONSO- | § | |
| MASCORRO (8) | § | |
| SIDNEY WORRELL (10) | § | |

**GOVERNMENT'S MOTION TO ADMIT TEXT MESSAGES
AND COOPERATING WITNESS TESTIMONY**

Despite the Court suppressing wire interception in this matter, the Government should still be able to admit intercepted text messages because they were obtained in compliance with Title III and are not fruits of the wire interception. Similarly, the Government should be able to present testimony from cooperating defendants for the same reason. Any illegality is cured by the attenuation, independent source and severance doctrines.

**A.     Title III is much less stringent for electronic interception.**

This Court adopted a magistrate judge's recommendation to suppress wire interception in this matter. See Doc. Nos. 220 and 201. The magistrate judge found the wire interception orders facially insufficient because they did not provide the names of the authorizing officials. Doc. No. 201. The magistrate judge found that text message suppression had not been raised. *Id.* at 6-7.

Title III is not nearly as stringent for electronic interception. 18 U.S.C. § 2516(3) provides:

> *Any attorney for the Government* (as such term is defined for the purposes of the Federal Rules of Criminal Procedure) *may authorize* an application to a Federal judge of competent jurisdiction for, and such judge may grant, in conformity with section 2518 of this title, an order authorizing or approving the interception of *electronic communications* . . . .

(emphasis added). The facial insufficiency standard for wire interception that 18 U.S.C. § 2518(40(d)(ii) does not apply to electronic communications such as text messages.

Each Order references that the Application was made by a Special Assistant United States Attorney, who is an "attorney for the Government." *Id.* Therefore, omitting the identity of the authorizing DOJ official from an order as it applies to the interception of *electronic* communications cannot lead to suppression of electronic communications under subparagraph (ii). *See United States v. Apodaca*, 287 F. Supp. 2d 21, 32-33 (D.D.C. 2017). Moreover, the statutory suppression provision itself only allows suppression of "wire or oral communications." 18 U.S.C. § 2518(10)(a). The statute does not allow for statutory suppression of electronic communications, and therefore a defendant may only seek Constitution-based suppression of such communications.

The legislative history indicates that "the only judicial remedies and sanctions available for *nonconstitutional* violations of this chapter involving such communications." S. Rep. 99-541, at *23, 1986 U.S.C.C.A.N. 3555, 3582 (emphasis added). Further, "[i]n the event that there is a violation of law of a constitutional

2

magnitude, the court involved in a subsequent trial will apply the existing Constitutional law with respect to the exclusionary rule." *Id.* (emphasis added). Taken together, this means Title III provides no extra statutory remedy for improper electronic interceptions. Regardless, the Government complied with the electronic interception portion of the statute by including the Special Assistant United States Attorney's name in the order. Thus, the analysis is a standard Fourth Amendment analysis.

**B.  The text messages are admissible under the independent source, severance and attenuation doctrines.**

  *1. The text messages are admissible under the independent source doctrine.*

After making purchases of marijuana using phone calls and text messages from Alvaro Romero in 2013 and 2014, agents received authorization to intercept wire and electronic communications on his phone on February 14, 2014. This led spin-off orders authorizing the following interceptions of wire and electronic communications for the following:

| Order Date | Phone (s) | User(s) |
| --- | --- | --- |
| February 14, 2014 | (281) 889-4897 | Alvaro Romero |
| March 21, 2014 | (281) 889-4897<br>(409) 273-0566 | Alvaro Romero<br>Arturo Elizondo |
| April 23, 2014 | (409) 273-0566<br>(409) 273-1101 | Arturo Elizondo<br>Alvaro Romero |
| May 14, 2014 | (832) 727-2669 | Jose Rubio |
| July 2, 2014 | (832) 277-7590 | Ricardo Aviles |
| August 8, 2014 | (832) 277-7590 | Ricardo Aviles |

During the February 14, 2014, electronic interception, Elizondo sent Romero a text message on February 17, 2014, at 11:18 a.m. saying, "Just waken up bro got ur money." This text led to the March 21 interception of Elizondo's electronic communications. During that period of interception, Elizondo sent Jose Rubio Villegas a text message on April 9, 2014 at 12:05 p.m. saying, "Ok Ijeed two splits.let mw onow whejbu finna come cuz ik at the gym." Agents believe the term "splits" meant a half kilogram of cocaine. That same day at 1:07 p.m., Rubio replied, "On d way." These texts led to the May 14, 2014, order for electronic interception of Rubio. That order led to the July 2, 2014, electronic interception of Aviles, who has pleaded guilty.

"The independent source doctrine is based 'upon the policy that, while the government should not profit from its [allegedly] illegal activity, neither should it be placed in a worse position than it would otherwise have occupied' had the [alleged] misconduct not occurred." *United States v. Restrepo*, 966 F.2d 964, 969 (5th Cir. 1992)(*quoting Murray v. United States*, 487 U.S. 533, 542 (1988)). Thus, even assuming police engaged in an unconstitutional activity, this action does not require exclusion of evidence discovered through an independent source. *See id.*

In the Title III context, the Fifth Circuit has found that cooperating co-defendants can be an independent source. *United States v. Houltin*, 566 F.2d 1027, 1031-32 (5th Cir. 1978). Similarly, the Ninth Circuit found that a cooperating co-defendant could purge taint from illegal interception. *United States v. Ryan*, 548 F.2d 782, 788-89 (9th Cir. 1976).

Suppression is not justified without a "causal relationship between the unconstitutional act and the discovery of evidence." *Utah v. Strieff*, 136 S.Ct. 2056, 2061 (2016). Under the "independent source" doctrine, courts may "admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source." *Ibid*. (*citing Murray v. United States*, 487 U.S. 533, 537 (1988).

Here, the magistrate judge only found a statutory defect — not a constitutional violation — in the wiretap order. Regardless, there is a "distinct, untainted" flow of text messages from Romero to Elizondo to Rubio to Aviles that complied with electronic interception standard set forth in 18 U.S.C. § 2516(3). Because the Government obtained the text messages through a separate statutory scheme, this Court should find the text messages are admissible under the independent source doctrine.

*2.    The text messages are admissible under the severance doctrine.*

Both before and after Congress enacted Title III, the lower courts have recognized "severance" — also known as "partial invalidity," "partial suppression," or "redaction" - as an additional application of similar causation principles. *See United States v. Sells*, 463 F.3d 1148, 1150 n.1 (10th Cir. 2006) (collecting cases from every circuit); *United States v. Cook*, 657 F.2d 730, 734-36 (5th Cir. 1981)(adopting *Aday v. Superior Court*, 362 P.2d 47, 52 (Cal. 1961); 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.6(f) (5th ed. 2012) (LaFave). Under that doctrine, when a traditional search warrant satisfies either the Fourth Amendment's particularity or probable cause requirements only in part, courts need not suppress all the evidence obtained pursuant to the warrant. Instead, if the valid and invalid applications can be

5

severed, courts may admit the evidence obtained under valid applications of the warrant, and suppress only the evidence "seized under the authority" of the parts that are invalid. *United States v. Christine*, 687 F.2d 749, 754 (3d Cir. 1982); LaFave § 4.6(f), at 814-815 (describing *Aday* as the "leading case" and stating that its rule "is sound"); *cf. Waller v. Georgia*, 467 U.S. 39, 43 n.3 (1984) (rejecting suppression remedy for validly seized items where police also made invalid seizures in warrant-authorized search). For example, if a warrant authorizes the search of two apartments, but probable cause was lacking as to one, any suppression remedy would be limited to that apartment. *See, e.g., United States v. Pitts*, 173 F.3d 677, 679-681 (8th Cir. 1999).

The severance doctrine's underlying rationale is that "it would be harsh medicine indeed if a warrant issued on probable cause and particularly describing certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well." LaFave § 4.6(f), at 815. And that rationale translates with full force to Title III. When a defect in a Title III order causes it to be "insufficient on its face" in only some of its applications (such as phone calls but not text messages), then only the evidence intercepted pursuant to the invalid applications would be subject to suppression. The untainted evidence should be severed and admitted. *Cf.* LaFave § 4.6(f), at 816 ("When [a] warrant's fault is not so pervasive," the objective of deterrence "may be served in the same way and to the same degree by limiting suppression to the fruits of the warrant's unconstitutional component.")

Here, the text messages can be severed from the phone calls. Each order authorized "wire *and electronic* interception." Each affidavit in support of the

6

application gave incriminating text messages separate and apart from the incriminating phone calls. Each phone had dirty text tolls, meaning the phone being intercepted had text contact with other suspected drug traffickers. Because of this constant separation, this Court can sever the text messages from the phone calls. After doing that, the intercepted text messages remain admissible because their interception was properly authorized under the applicable statute.

      *3.    The text messages are admissible under the attenuation doctrine.*

The text messages are similarly admissible under the attenuation doctrine. Not all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 487-88, (1963). *See also* Senate Report 96 (stating that Congress had "no intention to change the attenuation rule" when it enacted Title III).

Here, there are several means of accessing the text messages that are sufficiently distinguishable from the wire interception order. First, there is a separate statutory scheme for electronic interception that agents complied with fully. Second, there is an unbroken chain of text messages from Romero to Elizondo to Rubio to Aviles. Even if the intercepted phone calls helped agents understand the text messages better, the fully complied with electronic statutory scheme purges any taint from the intercepted phone calls. Thus, the text messages should be admissible.

## C.   Cooperating defendants' testimony is admissible under the attenuation doctrine.

In December 2013, DEA Galveston Resident Office agents established a Cooperating Source ("CS1") who provided information into the drug trafficking activities of Alvaro Romero. CS1 advised that Romero obtained narcotics from a source in the Rio Grande Valley, had them transported to the Houston area, and then distributed them through the Eastern District of Texas to Lake Charles, Louisiana, and other locations further east.

CS1 advised that before becoming a CS, he/she had purchased approximately two hundred and fifty (250) pounds of marijuana and eight (8) kilograms of cocaine from Romero. On January 2014, CS1 made three narcotics purchases from Romero and called Romero's phone to set up the purchases. Based on these calls, Title III interceptions began.

Romero was indicted on December 6, 2017, arrested on February 21, 2018, and arraigned on February 26, 2018. He debriefed with prosecutors on April 23, 2018, and pleaded guilty on August 6, 2018. Worrell filed his motion to suppress on August 10, 2018.

Similarly, Cynthia Lopez first debriefed on May 23, 2018. While she did not plead guilty until March 12, 2019, she did not join Worrell's motion. Miguel Gerardo Rodriguez pleaded guilty on April 17, 2019, but also did not join in Worrell's motion.

The Supreme Court has strongly cautioned against excluding live witnesses as fruits of the poisonous tree. It specifically refused to hold that making a confession under

8

circumstances that prevent its use perpetually disables the confessor from testifying. *United States v. Bayer*, 331 U.S. 532, 541 (1947). "In short, since the cost of excluding live-witness testimony often will be greater, a closer, more direct link between the illegality and that kind of testimony is required." *United States v. Ceccolini*, 435 U.S. 268, 278 (1978).

In *Ceccolini*, the Court reversed the Second Circuit and district court, which both found a live witness was the fruit of an illegal search. *Id. Ceccolini* involved an officer initially looking at an envelope full of suspicious currency. *Id* at 270. The officer then asked a shopkeeper about the envelope, and the shopkeeper gave the officer Ceccolini's name. *Id.* The Court reversed the findings of the lower court that the shopkeeper's testimony was the fruit of an illegal search of the envelope. It held that because the shopkeeper freely spoke with police, the illegal search was not material to the shopkeeper's testimony and, thus, was not an illegal fruit. *Id.* at 279-80.

Here, the illegality is in not including the authorizing official's name in the wiretap order. That is unrelated to Romero and Lopez's decisions to cooperate. They both debriefed in advance of the suppression motion being filed, and Romero pleaded guilty in advance of it. As such, there is no connection between the wiretap order and their cooperation. Under *Ceccolini*, any taint from wiretap order related to their testimony has been purged.

D.   **Suppression is the wrong remedy.**

The "grave adverse consequence that exclusion of relevant incriminating evidence always entails," *Hudson v. Michigan*, 547 U.S. 586, 595 (2006), makes it especially

9

unlikely that Congress intended suppression of evidence when its interception lacked a causal connection to a statutory or constitutional violation as is the case here with the text messages. "Quite apart from the requirement of unattenuated causation, the exclusionary rule has never been applied except 'where its deterrence benefits outweigh its substantial social costs.'" *Id.* at 594 (*quoting Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998)). Nothing suggests that Congress intended Title III's suppression remedy, which was meant to mirror the Fourth Amendment's, see Senate Report 96, to apply in situations where it would serve no significant purpose.

The constitutional suppression remedy is designed to "safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Leon*, 468 U.S. 897, 906 (*quoting United States v. Calandra*, 414 U.S. 338, 348 (1974)). Suppression is an "extreme sanction," *id.* at 916, that "always entails" significant societal costs, *Hudson*, 547 U.S. at 595. Most obviously, it can allow "guilty and possibly dangerous defendants [to] go free — something that 'offends basic concepts of the criminal justice system.'" *Herring v. United States*, 555 U.S. 135, 141 (2009)(*quoting Leon*, 468 U.S. at 908). Thus, the Supreme Court has found suppression warranted only where its "remedial purpose" is "effectively advanced" and the benefits of deterrence outweigh suppression's "'substantial social costs.'" *Illinois v. Krull*, 480 U.S. 340, 347, 352 (1987) (*quoting Leon*, 468 U.S. at 907). Because the statutory electronic scheme was complied with and because there is a direct line of text message from Romero to Aviles, and because the co-defendants' testimony is not a fruit of the poisonous tree, this court should admit the text messages and co-defendant testimony.

10

Respectfully submitted,

JOSEPH D. BROWN
UNITED STATES ATTORNEY

*/s/ Christopher T. Rapp*
CHRISTOPHER T. RAPP
Assistant U.S. Attorney
350 Magnolia Ave., Ste. 150
Beaumont, Texas 77701-2248
409-839-2538 Phone
Arizona Bar 025704
Christopher.T.Rapp@usdoj.gov

CERTIFICATE OF SERVICE/CONFERENCE

I hereby certify that a copy of this motion was provided to defense counsels April 24, 2019, via electronic transmission.

*/s/ Christopher T. Rapp*
CHRISTOPHER T. RAPP
Assistant U.S. Attorney