IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>ALVARO ROMERO (1),<br>ARTURO ELIZONDO (2),<br>RICARDO AVILES (4),<br>JOSE RUBIO-VILLEGAS (6),<br>INES RUBIO-VILLEGAS (7),<br>ALEXANDER ALONSO-MASCORRO (8),<br>and SIDNEY ANTHONY WORRELL (10). | NO.1:17-CR-00153-TH (ZH) |

**REPORT AND RECOMMENDATION**
**DENYING DEFENDANTS' MOTION TO SUPPRESS**

Pending before the undersigned is Defendant, Sidney Anthony Worrell's, "Motion to Suppress Text Messages, Cooperating Witness Testimony and Physical Evidence."[1] (Doc. No. 370.) Defendants Alonso-Mascorro (Doc. No. 373)[2], Jose Rubio-Villegas (Doc. No. 374), Alvaro Romero (Doc. No. 375), and Ines Rubio-Villegas (Doc. No. 379) filed motions to adopt Worrell's motion to suppress. The undersigned grants the motions to adopt, but recommends denying the the motion to suppress for the reasons explained below.

---

[1] This motion is nearly identical to a motion to suppress previously filed by Defendant Arturo Elizondo (Doc. No. 313), which several defendants asked to join or adopt. (Doc. No. 314 (Worrell's motion to join), Doc. No. 315 (Defendant Alonso-Mascorro's motion to join), Doc. No. 319 (Jose Rubio-Villegas's motion to join), and Doc. No. 320 (Aviles' motion to join)). However, Elizondo withdrew his motion to suppress prior to the oral hearing. (Doc. No. 371.) The undersigned finds that Elizondo's motion to withdraw should be granted, which moots all requests from co-defendants to join his initial motion.

[2] Alonso-Mascorro separately filed a "Motion for Speedy Trial." (Doc. No. 360.) Although titled a "Motion for Speedy Trial," Alonso-Mascorro requests suppression of evidence on the grounds raised in the motion to suppress at issue here. For the reasons stated in this Report and Recommendation, the "Motion for Speedy Trial," construed as a Motion to Suppress, should be denied. Otherwise, Alonso-Mascorro's speedy trial rights are governed by 18 U.S.C. § 3161.

## I.  Background

In 2013 and 2014, the United States Drug Enforcement Administration conducted an investigation into the Romero Drug Trafficking Organization. (Doc. No. 181 at 1.) During this investigation, the Government filed eight applications for orders authorizing the interception of wire and electronic communications (the "Wiretap Orders").[3] On August 10, 2018, Defendant Worrell filed a motion to suppress all "fruits" of the interception of wire communications of his cellular phone on the grounds that the interception orders were facially insufficient.[4] (Dkt. No. 172) (hereinafter "Worrell's Original Motion to Suppress").  On November 2, 2018, the undersigned entered a Report recommending that the Court grant Worrell's Original Motion to Suppress on the grounds that the wiretap orders were facially insufficient because they did not contain the identity of the high-level Justice Department official who approved the applications, as required by 18 U.S.C. § 2518(4)(d).  Important to this analysis, the Report made no recommendation whether to suppress text messages or electronic communications:

> ". . . the undersigned does not need to resolve [whether the text messages should be excluded]. The Defendants have not moved to suppress any electronic communications, nor does the evidence establish that the Defendants had any electronic communications intercepted by authority of the Wiretap Orders."

(Dkt. No. 201, p. 8.) The District Court adopted the Report and Recommendation. (Doc. No. 220; 2018 WL 6981231, at *1 (E.D. Tex. Nov. 2, 2018), report and recommendation adopted, 2019 WL 137586 (E.D. Tex. Jan. 8, 2019). The Government filed an interlocutory appeal to the Fifth Circuit Court of Appeals on January 23, 2019. *United States v. Romero, et. al.*, 19-40045 (5th Cir.).  The appeal was dismissed at the Government's request on April 5, 2019. No. 19-

---

[3] (Doc. Nos. 181-1, p. 20; 181-2, p. 20;181-3, p. 18; 181-4, p. 21; 181-5, p. 23; 181-6, p. 21; 181-7, p. 21; 181-8, p. 21.)

[4] The Motion to Suppress was joined by Defendant Romero on August 20, 2018. (Dkt. No. 178.)

40045, 2019 WL 3297470 (5th Cir. Apr. 5, 2019). On April 24, 2019, the Government filed a "Motion to Admit Text Messages and Cooperating Witness Testimony." (Doc. No. 289.) The Government claimed that despite the court's suppression of wire communications, the Government should still be allowed to admit text messages "because they were obtained in compliance with Title III and are not fruits of the interception. Similarly, the Government should be able to present testimony from cooperating defendants for the same reason." (*Id.,* p. 1.) The undersigned recommended denying the Government's motion because there was no pending motion to suppress text messages or cooperating witness testimony, making the Government's request in effect an advisory opinion. (Doc. No. 311.)

### II. Motion to Suppress Text Messages, Cooperating Witness Testimony and Physical Evidence

Defendants now request suppression of electronic communication, specifically text messages, and the evidence derived therefrom that was intercepted as a result of the facially insufficient Wiretap Orders.[5] For support, the Defendants rely on *United States v. Smith*, 978 F.2d 171, 175 (5th Cir. 1992), to argue that Title III's exclusionary rule applies to wire, oral, *and* electronic communications. *Id*. The Defendants argue that the text messages are subject to suppression because they were discovered as a result of the facially insufficient Wiretap Orders

---

[5] Electronic communication is defined as any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include--
    (A) any wire or oral communication;
    (B) any communication made through a tone-only paging device;
    (C) any communication from a tracking device (as defined in section 3117 of this title); or
    (D) electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds.
18 U.S.C.A. § 2510 (12).

and should be considered fruit of the poisonous tree.[6] Defendants also argue that the text messages are subject to exclusion because the government is required to comply with the statutory requirements applicable to wire communications (codified at 18 U.S.C. § 2518) when applying for a hybrid (wire and electronic) interception order.

The Government responds that even though the wire communications were suppressed, the intercepted text messages should be admitted because they were obtained in compliance with Title III and are not fruits of the wire interception.

On February 12, 2020, the undersigned held a hearing on the Defendants' motion to suppress.

### III. Analysis

*Text messages*

Title III—the federal statute governing authorization of wiretaps—provides in relevant part that:

> Any attorney for the Government (as such term is defined for the purposes of the Federal Rules of Criminal Procedure) may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant, in conformity with section 2518 of this title, an order authorizing or approving the interception of *electronic communications* by an investigative or law enforcement officer having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of any Federal felony.

18 U.S.C. § 2516 (3) (emphasis added).  It is undisputed that the wiretap applications at issue—those seeking the interception of electronic communications, including text messages—were

---

[6] The exclusionary rule reaches not only the evidence uncovered as a direct result of the violation, but also evidence indirectly derived from it—so-called "fruit of the poisonous tree." *Utah v. Strieff*, 136 S. Ct. 2056, 2061, (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)); *see Nardone v. United States*, 308 U.S. 338, 341 (1939). The exclusionary rule encompasses both the "primary evidence obtained as a direct result of an illegal search or seizure" and, relevant here, "evidence later discovered and found to be derivative of an illegality," the so-called "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. at 804; *United States v. Mendez*, 885 F.3d 899, 909 (5th Cir. 2018).

made by a Special Assistant United States Attorney, who is an authorized party to apply for a wiretap order under 18 U.S.C. § 2516(3).[7] Thus, the interception of electronic communications was properly authorized by the district court's Wiretap Orders, and the Defendants seem to concede this point. Instead, the pertinent issue before the court now is whether the electronic communications, which were lawfully intercepted, should nevertheless be suppressed under 18 U.S.C. § 2518 because they were discovered as a result of a facially invalid wiretap order.

The Government contends that the scope of § 2518 does not allow for statutory suppression of electronic communications obtained as a result of the Wiretap Orders. Specifically, section 2518 (10)(a) applies only to "wire or oral communications," not electronic communications. Section 2810 provides

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any *wire or oral communication* intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C.A. § 2518(10)(a) (emphasis added). *See also* 18 U.S.C. § 2515 (defining the statutory scope of the Title III exclusion remedy) ("Whenever any *wire or oral* communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom

---

[7] Compared with the court's prior order suppressing wire communications on the grounds that the Wiretap Orders were facially invalid for failing to identify the high-level Justice Department official who approved the applications.

may be received in evidence in any trial, hearing, or other proceeding . . . if the disclosure of that information would be in violation of this chapter") (emphasis added).

In response, the Defendants contend that established Fifth Circuit precedent holds that Title III's exclusionary rule applies equally to wire, oral *and* electronic communications. *United States v. Smith*, 978 F.2d 171, 175 (5th Cir. 1992). In *Smith*, the Fifth Circuit commented, without explanation, that the Title III exclusionary rule applies to all three types of communication: wire, oral, and electronic. *Id.* ("[T]his exclusionary rule only applies to communication that is 'wire,' 'oral,' or 'electronic'") (internal citations omitted).[8] However, *Smith* is factually distinguishable because the Defendant sought to suppress cordless telephone conversations and *not* text messages. In the twenty-eight years since *Smith*, the Fifth Circuit has not further defined its remark nor definitively applied the suppression remedy of Title III to text messages. Furthermore, it is unclear what the Fifth Circuit intended when it mentioned that the exclusionary rule applies to electronic communications, but it is certain that it could not have intended to include text messages as they were not yet commercially available. (*Id.*)

Many courts recognize that the Title III exclusionary rule does not apply to electronic communications. *See United States v. Apodaca*, 287 F. Supp. 3d 21, 31 (D.D.C. 2017) (holding that the exclusion remedy is limited to improper interception of wire and oral communications); *United States v. Steiger*, 318 F.3d 1039, 1052 (11th Cir. 2003) (examining the legislative history of the ECPA to conclude that "a statutory suppression remedy does not exist for unlawful interceptions of 'electronic communications'"); *United States v. Meriwether*, 917 F.2d 955, 960 (6th Cir. 1990) (holding that "[t]he ECPA does not provide an independent statutory remedy of

---

[8] Coincidently, the Fifth Circuit decided *Smith* in 1992—the same year that the first text message was sent from a computer keyboard to a cellphone, and one year before the first commercial text was sent. Victoria Shannon, *15 years of text messages, a 'cultural phenomenon,'* N.Y. Times, Dec 5, 2007.

suppression for interceptions of electronic communications); *United States v. Banks*, 2014 WL 4261344, at *2 (D. Kan. Aug. 29, 2014) ("the statutory suppression remedy extends to wire and oral communications only"). Some of these courts relied on the legislative history to show that Congress agreed not to add electronic communication to the statutory exclusionary rule, but instead added 18 U.S.C. § 2518(10)(c), which provided for suppression of electronic communications only under the judicially created exclusionary rule. [9]

Despite the conflicting application of § 2518 and whether it extends to text messages, the Defendants are correct that the undersigned is bound by Fifth Circuit precedent. Therefore, if the Fifth Circuit had ever applied Title III's suppression remedy to text messages, the issue before the court would be easily answered. But, the Fifth Circuit has never applied the Title III exclusionary rule to text messages. Instead, the Fifth Circuit made one comment in a technologically-outdated opinion that the Title III exclusionary rule not only applies to communication that is 'wire,' and 'oral,' but equally to 'electronic' communications, without further discussion or application. The undersigned does not find that this stray remark constitutes binding legal precedent. Accordingly, the undersigned finds that § 2518 does not provide an independent statutory remedy of suppression for interception of text messages.

The Defendants raise a secondary argument that even if the court finds that the suppression remedy of Title III does not extend to text messages, § 2518(10)(a) provides for suppression of "any evidence derived" from an illegal interception. The Defendants claim that the Wiretap Orders—specifically the first and second orders—resulted in illegal interception and

---

[9] *See* Senate Report No. 99-541, 103 Cong., 2d Sess., 1986 U.S. Code Cong. & Ad. News 3577; s*ee also* Michael S. Leib, *E-Mail and the Wiretap Laws: Why Congress Should Add Electronic Communication to Title III's Statutory Exclusionary Rule and Expressly Reject a "Good Faith" Exception*, 34 HARV. J. ON LEGIS. 393 (1997).

Section 2518(10)(c) reads: "The remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications." § 2518(10)(c).

the evidence derived therefrom (all subsequent text messages) are fruits of the poisonous tree and should be suppressed pursuant to the Fourth Amendment. However, other than their failed argument that the initial wiretap orders for electronic communications were facially invalid under § 2518, the Defendants put forth no argument or evidence that the initial wiretap orders for electronic communications were obtained from a violation of their Fourth Amendment rights. The undersigned finds that because the Government complied with the electronic interception portion of the statute by including the Special Assistant United States Attorney's name in the order, the initial (and all subsequent) wiretap applications and orders for electronic communications were obtained in accordance with the guarantees provided by Fourth Amendment.[10]

*Co-Defendant Testimony*

The Defendants further argue that any co-defendant testimony is the fruit of the poisonous tree, and that the casual connection between the illegal wiretaps and the prosecution of the co-defendants is clear and direct. The proverbial tree in the Defendants' analysis is the Wiretap Orders that were allegedly tainted for the multiple reasons raised in the Defendants' motion to suppress and addressed *supra*. The undersigned finds no grounds on which to suppress the text messages obtained from the Wiretap Orders. Therefore, the text messages do

---

[10] The Defendants raise a related argument that the initial wiretap applications were "hybrid applications"—asking for wire *and* electronic communications. The Defendants claim that the legislative history of the 1986 amendments to Title III suggest that Congress contemplated the notion that hybrid orders should satisfy the more stringent standards for wire communications. The legislative history is not definitive on this concept, but the statutory language is clear—the statutory suppression provision of § 2518 relates to oral and wire communications *only*. "Legislative history is relegated to a secondary source behind the language of the statute in determining congressional intent" and "even in its secondary role must be used 'cautiously.' " *Boureslan v. Aramco*, 857 F.2d 1014, 1018 (5th Cir. 1988) (citing *United States v. Smith*, 795 F.2d 841, 845–46 (9th Cir. 1986)). "The Supreme Court has repeatedly stated that '[a]bsent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive.' " *Id.* (quoting *Escondido Mut. Water Co. v. La Jolla Indians*, 466 U.S. 765, 772 (1984)). There is no binding legal precedent to support the notion that a request for electronic communication must comply with the more stringent standard for wire communication if they are presented in the same (*i.e.*, hybrid) application.

not constitute a poisonous tree and neither the text messages nor any co-defendant testimony derived therefrom are considered "tainted fruit." Accordingly, the Defendants' request that co-defendant testimony deriving from text messages be suppressed should be denied. However, because the wire communications have been suppressed (Doc. No. 220), the Government still has the burden of showing that the co-defendant's testimony was sufficiently attenuated from the wire communications at issue.[11]

*Physical Evidence and Defendant Identity*

The Defendants' argument for suppressing physical evidence (seized cocaine) and defendant identity mimics the grounds advanced for suppressing co-defendant testimony. Accordingly, the undersigned's finding is the same. Because the Wiretap Orders for electronic communication were valid, the evidence derived therefrom should not be suppressed. Again, the Government will bear the burden to show that the physical evidence and identity testimony was sufficiently attenuated from the wire communications.

## IV. Recommendation

Defendants Elizondo and Aviles' Motions to Withdraw (Doc. Nos. 371 and 372) are granted. Accordingly, the following pending motions are denied as moot: Doc. No. 313 (Elizondo's original motion to suppress text messages), Doc. No. 314 (Worrell's motion to join), Doc. No. 315 (Alonso-Mascorro's motion to join), Doc. 319 (Jose Rubio-Villegas's motion to join), Doc. No. 320 (Aviles' motion to join), and Doc. No. 365 (Romero's motion to join). All pending motions to adopt Defendant Worrell's motion to suppress are granted. (Doc. Nos. 373, 374, 375 and 379.) The undersigned recommends that Defendant Elizondo's motion to withdraw should be granted (Doc. 371), which moots all previous requests from co-defendants to join his

---

[11] The Government bears the burden of proving attenuation by a preponderance of the evidence. *See United States v. Hassanshahi*, 145 F. Supp. 3d 75, 87–88 (D.D.C. 2015).

initial motion. (Doc. Nos. 314, 315, 319, and 320.) Alonso-Mascorro's motion for a speedy trial (Doc. 360), which the court construes as a motion to suppress, is denied.

The statutory suppression remedy of Title III does not apply to text messages. Moreover, the Fifth Circuit has never relied on 18 U.S.C. § 2518 to suppress text messages. Furthermore, the Defendants have failed to establish that the text messages, or evidence derived therefrom, resulted from a constitutional violation. Accordingly, the undersigned recommends denying the Defendants' "Motion to Suppress Text Messages, Cooperating Witness Testimony and Physical Evidence." (Doc. No. 370.)

### V. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report, and (4) no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2); Local Rule CV-72(c). A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such

findings of fact and conclusions of law accepted by the United States District Judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 6th day of March, 2020.

_____
Zack Hawthorn
United States Magistrate Judge